FOERST v. MASONIC HALL ASSOCIATION OF SOUTH SAN FRANCISCO.

No. 14,184; January 5, 1893.

31 Pac. 903.

Mortgage—Default in Interest—Excuse.—A Mortgage Given to plaintiff by defendant association provided that there should be quarterly payments of interest, and that, on failure to so pay, the whole sum, at plaintiff's election, should become due. After the papers had passed defendant's officers agreed that plaintiff could have the payments monthly, by calling for them, to which plaintiff assented, and for several months thereafter called and received her interest. Later, she failed to call, the interest was not paid, and plaintiff sought to have the whole debt declared due. Held, that, after plaintiff's promise to call for the interest, defendant was excused from seeking her, to

make payment, and, since the failure to pay was caused by her own act, she could not exact a penalty for such failure.

**Mortgage—Default in Interest—Claim of Forfeiture.**—The fact that plaintiff called for the interest once, when defendant's president, who always paid her, was not in, does not aid her claim of forfeiture, when it does not appear that she demanded the interest from anyone else, nor that, at the time she called, any interest was due.

**Mortgage — Default in Interest.**—A Finding That Plaintiff Authorized an agent to collect the interest, and that he demanded it from defendant's president, who refused to pay unless he brought a written order from plaintiff, is contrary to the evidence, when the only testimony on the subject is that of the agent, who stated that he called on defendant's president, and asked him about the interest, and the president said that the money was ready for plaintiff, but that he would like to have an order before paying it, to which request the agent made no objection.

**Mortgage—Default in Interest.**—A Finding That Plaintiff's Attorney, both before and after October 1st, which was more than three months after the last payment, demanded payment of the interest, and that such payment was refused unless he had written authority, if true, would not be conclusive of a default; for the question would still be open as to whether defendant had reasonable ground to doubt the attorney's authority.

**Mortgage—Default in Interest.**—Where Plaintiff Knew that defendant's agents were looking for her, to pay the interest, but she did not inform them where she was, or that she had authorized an agent to receive the money, failure of defendant to pay the interest within the prescribed time does not constitute a default.

APPEAL from Superior Court, City and County of San Francisco; J. P. Hoge, Judge.

Action by Minna Foerst against the Masonic Hall Association of South San Francisco to foreclose a mortgage. From a judgment for plaintiff, defendant appeals. Reversed.

Wm. & Geo. Leviston for appellant; F. J. Castelhun for respondent.

TEMPLE, C.—This is an action to foreclose a mortgage, in which the plaintiff had judgment, and the defendant appeals from the judgment, and from an order refusing a new trial.

46

A preliminary objection is made to the statement, on the ground that it was not served in time. The judge made an order extending the time thirty days, in which "to serve notice of intention to move for a new trial, and the proposed bill of exceptions." Within that time the notice of intention was duly served and filed, and within ten days thereafter another order was made, extending the time to prepare and serve a bill of exceptions and statement of the case thirty days, in addition to the time allowed by law. The statement was prepared and served within the period of the extension, and was therefore in time.

Among other necessary allegations the complaint contains the averment, that on the twenty-eighth day of November, 1888, defendant executed to plaintiff its note for $7,000, payable four years from date, with interest at the rate of seven per cent per year, payable quarterly, which note further provided "that if default is made in the payment of the interest, as it becomes due, the same shall be added to, and become and form a part of, the principal, and bear a like rate of interest, or that the whole amount, of both principal and interest, shall become due and immediately payable upon such default, at the option of the payee." A proviso to the same effect was also inserted in the mortgage. It is also alleged "that on the twenty-eighth day of August, 1889, there became due and payable to plaintiff, as interest on said note for the two months immediately preceding said date, the sum of $81.66; that said sum was not paid until on or about the fifth day of October, 1889, on which day said defendant paid to plaintiff the sum of $122.50, as interest on said note, for the three months ending September 28, 1889; that immediately before and after said payment was made, the plaintiff notified said defendant that she elected to consider the whole amount of the principal and interest due on said note as immediately due and payable," etc. Defendant answered, denying that either before or after September 28, 1889, or at any time, plaintiff notified defendant that she elected to consider the whole amount of principal and interest of said note as immediately due and payable, and defendant avers that shortly after the execution of said note and mortgage plaintiff requested that the interest be paid monthly instead of quarterly; that the defendant consented to pay the interest monthly, in-

stead of quarterly, if· plaintiff would call for the interest
monthly at the office of Dr. Todd, the president of defendant,
in the afternoon of the 10th of each month; that plaintiff
agreed to this, and did call and receive and collect her in-
terest monthly, in pursuance of the agreement, for several
months, but thereafter failed to call for the interest, and con-
cealed herself from the defendant, its officers, and agents,
with intent to evade the payment to her of said interest; that
the defendant, and its officers and agents, ever since the fail-
ure of plaintiff as averred, made diligent search and inquiry
as to her whereabouts, in order to tender to her the interest,
but have not been able to find her, by reason of her concealing
herself, and finally, on October 5, 1889, learning that Castel-
hun would receive payment for her, promptly paid the amount
to him for her; that this was the first opportunity defendant
had to pay said interest; that defendant was at all times
ready and willing to pay the interest according to the terms
of the note.   The case was tried by the court without a jury,
and findings were filed, to which exceptions are taken on the
ground that they are contrary to and not supported by the
evidence.

The first finding is almost in the language above quoted
from the complaint, to the effect that plaintiff notified de-
fendant, before and at the time of the payment of interest
on October 4, 1889, that she elected to consider the whole
amount of principal and interest due.   Under the view I
take in this case, I doubt if this finding is material, but I
find no evidence whatever which proves, or tends to prove,
that before the payment a syllable was ever uttered in regard
to such election.   Plaintiff's attorney, Mr. Castelhun, was
the only witness for plaintiff in regard to this matter.   He
shows considerable correspondence in regard to some alleged
defects in the title to the mortgaged property prior to Octo-
ber 4th, but not a word in regard to any such option.   In
regard to the payment on the 4th, he said: ''Mr. Shaw gave
me that check for the interest, and I gave him the following
receipt [here follows a receipt for the money], without waiving
any rights, and exercising the option of considering the whole
amount of said note now due.''   He then says: ''I informed
Mr. Shaw, right then and there, that we elected to consider
the whole amount of the note and mortgage due.''   This is

all there is in regard to the matter, and it does not appear that a word was said in regard to the option to consider the whole amount due until Castelhun had the check in his hand.

The second finding is to the effect that defendant never authorized anyone to agree that the interest should be paid monthly at the office of Dr. Todd. The point of this finding is said to be that the board of directors of defendant did not authorize or ratify the agreement. There is no conflict in the evidence showing that plaintiff did agree with the officers of defendant that she would call monthly upon Dr. Todd, and collect the interest. Dr. Todd, the president of defendant, testified that plaintiff called upon him, and complained that the interest was payable quarterly, when she understood it would be paid monthly, and said she must have it monthly. He told her to see Dunshee, the secretary, and he thought they could arrange the matter if she would call about the 10th, in the afternoon. She saw Dunshee about it. She did call monthly, and collect her interest until July, when she received two months' interest. Dunshee testified that he conversed with her about the matter, and finally told her that they would pay her if she would call after the first week at Dr. Todd's for it. "She said she would, and she was very glad to have it that way." This testimony is not controverted, but it is shown that there was no action on the subject by the directors. But, for the purposes of the defense, it was not necessary that there should have been a valid contract, changing the terms of the note. It was enough that she had promised to call in person for the interest, to excuse defendant from seeking her to make tender or payment. That they failed to do so was caused by her own act, and she cannot exact a penalty for the failure. If she desired to retract her promise, and stand upon her rights under the mortgage, good faith required that she should have first notified the agents of the defendant that she would call no more.

The third and fourth findings relate to the same subject, and are sufficiently discussed.

The sixth finding is to the effect that plaintiff called at the office of Dr. Todd in the latter part of the month of August, once for her interest, but no interest was paid to her. Perhaps this is verbally true, but, as applying to any issue in the case, it is misleading, and unsupported by the

evidence. Plaintiff testified that she called twice, but Dr. Todd was not in, and it does not appear that she demanded her interest from anyone. At that time the officers of defendant had no cause to suppose that she did not intend to keep her promise to call personally for her interest. Furthermore, it does not appear that when she called any interest was due her, It fell due on the 28th, and the latter part of August would include time prior to that date.

The seventh finding is to the effect that plaintiff, in September, authorized one Rosekamp to collect the interest, and that the agent demanded it from Dr. Todd, who refused to pay unless he brought a written order from plaintiff. This finding is not only unsupported by the evidence, but is contrary to all the testimony upon the subject. Rosekamp is the only witness who gave testimony relating to the matter. He said, after showing his authority: ''I went there, and asked the doctor about it, and he said he would like to get an order from Mrs. Foerst to pay that. That was all the conversation I had about the matter. I told him that I was authorized by Mrs. Foerst to collect the interest. I had known Dr. Todd fifteen years, and he knew my official position. Cross-examination: Dr. Todd said that the money was ready for Mrs. Foerst, but that he would like to have an order before paying it.'' This testimony, so far from showing that Dr. Todd declined to pay the interest, shows his entire readiness so to do. He expressed a desire for a written order, and plaintiff's agent made no objection to this reasonable request, but, on the contrary, seemed to acquiesce in it. Dr. Todd had no reason to suppose that his request was or could be construed into a refusal to pay. The request was a reasonable one, and should have been complied with. The fact that oral authority is sufficient to authorize the agent to collect does not affect the question. Rosekamp was a public officer, and was not an employee of plaintiff. Defendant had a right to have the payment indorsed upon the note or a receipt from plaintiff for the money. He had a right to reasonable evidence of the agency. Rosekamp did not have the note with him. Under such circumstances, fair dealing required, at the very least, that defendant's agent should have been made to understand that a failure to pay without a written order would be taken as a refusal to pay. The agent of plain-

tiff not only did not make an absolute demand for payment without the order, but apparently acquiesced in the request.

Finding 8 is to the effect that plaintiff's attorney, Castelhun, both before and after October 1st, demanded payment of the interest, and that such payment was refused unless he had written authority. If true, this finding would not be conclusive of a default. The question would still be open as to whether defendant had reasonable ground to doubt Castelhun's authority. One must be satisfied with reasonable evidence of the authority of an agent, when required to pay money, or refuse to do so at his peril. But such reasonable evidence he is entitled to demand. But the evidence does not support the finding that such demand was made before October 1st, or that payment was ever declined unless written authority was produced. Some evidence there is that Castelhun told Leviston, defendant's attorney, about October 1st, that Castelhun was authorized to receive the money. Leviston was then, so far as appears, only employed in reference to alleged defects in the title of defendant to the mortgaged premises, and it does not appear that this statement was ever communicated to defendant's agents. Such a demand was made by Castelhun on defendant, October 1st, and apparently at the first interview thereafter between Shaw and Castelhun the interest was paid, to wit, October 4th.

The tenth finding is to the effect that plaintiff did not conceal herself with intent to evade the payment of interest to her. In this finding the court probably intended only to say that the concealment was not with the intent to evade the payment of the interest; but even in this it is against the evidence, and on this point there is no conflict. It must be remembered that parties occupying this continued relation owe each other, all the way through, fair and honest dealing. It was the duty of plaintiff to inform defendant of her address, or her agent's; and if she did not do so, and defendant made reasonable effort to find her, and failed, there was no default. On this subject plaintiff testified: "I know that the defendant's agents were looking for me. Question. Well, didn't you conceal yourself from them? Answer. Nonsense! What did I want to do that for? Q. Could they have found you? A. Well, indeed, I did not want them to find me, for I did not want to deal with them any more. I had two men

employed to attend to my matters. The Court: Q. Did you tell them that these gentlemen would collect the interest for you? A. Tell, who, sir? Q. The association, or the officers of the association? A. No, I did not tell the officers. You know I told Dr. Todd when I collected the interest the last time. I said, 'I don't know who collects the interest next month,' for I intended then to go back east or to Germany. He said, 'It makes no difference'; and then I sent Mr. Rosekamp. Q. Well, did you tell him that you would send Mr. Rosekamp? A. No, sir; but they knew Mr. Rosekamp for ten or twelve years, if not longer. He is an officer out there. He is sergeant of the police. Q. Did you ever notify them you had two men employed to attend to your matter? A. They knew, three weeks before I authorized Mr. Castelhun to collect the interest, that I had employed some one, for they gave Mr. Castelhun the deed of the lot which was mortgaged to me. So they must have known that he was employed in the matter. I didn't tell any of the officers of the association that these two gentlemen were authorized to collect interest for me. I didn't tell them that I would send Mr. Rosekamp. I knew that the officers of the association were looking for me after the interest became due, but I didn't want to see them. I did not want to deal with them any more after the president of the German bank told me that the mortgage was not a perfection, and that it was very hard for me, a lone-standing woman, to look after the matter.'' It is difficult to doubt the motives of plaintiff, after reading her testimony. What knowledge the officers of the association had of the authority of her agents has been sufficiently considered.

The eleventh finding is to the effect that defendant did endeavor to find plaintiff, but failed, and its officers were informed that she did not wish to meet them, but that her attorney had full power to transact her business. The last clause of the finding is entirely unsupported by the evidence, so far as it is applicable to the condition of things prior to October 1st.

The twelfth and thirteenth findings are unsupported by a scintilla of evidence, but, on the contrary, are against the evidence, which is without conflict.

It follows that the judgment must be reversed and a new trial had. The other points, under the circumstances, are not mentioned.

We concur: Belcher, C.; Vanclief, C.

McFARLAND and HARRISON, JJ.—For the reasons given in the foregoing opinion the judgment is reversed and a new trial ordered.

DE HAVEN, J.—I concur in the judgment. I think the evidence sufficient to support finding No. 1; but, in respect to other questions discussed, I concur in the foregoing opinion.