TONKEL *v.* SHIELDS.

[87 South. 646, No. 21625.]

1. PAYMENT. *Application where payments made at different dates
   and before maturity under contract to apply proceeds on debts
   stated.*

   Where a party bought lands on deferred payments making a series
   of notes and providing that interest on all notes shall be pay-
   able annually, and further providing that the buyer may sell
   timber on the lands sold and apply the proceeds on the notes
   *pro rata,* and where timber is sold and the proceeds applied to
   the debts at different dates and in different amounts, such pay-
   ments should be applied first to paying the accrued interest on
   all the notes to the dates of payment, and then in reducing the
   principal by prorating it among the notes. This is especially
   true where none of the notes are due at the date of the payments.

2. MORTGAGES. *Foreclosure sale will be enjoined where tender by
   check sufficient, although money not actually paid into court.*

   Where, in such case, the maker of the notes tenders to the holder
   in good faith the amount claimed to be due by her, by check,
   which is not accepted, but refused on the ground that the amount
   is not sufficient, and not on the ground it is not money, and the

proof shows that the money was in the bank to the credit of the drawer of the check, and that it would have been paid if presented; and, where under the contract the holder of the mortgage and notes attempts to advance the unmatured debt on a theory of default, and advertises the property for sale, an injunction will lie to destrain the sale, and this is true though the bill only offers to pay the amount due, and does not actually pay the money into court, as the complainant should ordinarily do.

APPEAL from chancery court of Sunflower county.
HON. E. N. THOMAS, Chancellor.

Bill by Mrs. Ollie Shields against M. Tonkel to restrain sale under a deed of trust. Decree for plaintiff, and defendant appeals. Affirmed.

*A. W. Shands, J. C. Walker* and *Montgomery & Crisler,* for appellant.

The only point involved here is as to the correct method of application of these payments. We readily concede that the rule in Mississippi, in the absence of any application of payments on an indebtedness by either debtor or creditor, is that the law appropriates the same most beneficially to the debtor. *McLaughlin* v. *Green,* 48 Miss. 175; *Neal* v. *Allison,* 50 Miss. 175; *Windson* v. *Kennedy,* 52 Miss. 164.

The entire indebtedness of Mrs. Shields to M. Tonkel being represented by a series of secured notes to apply these sundry payments most beneficially to her would mean to apply them in such a way as to cause her to pay the smallest amount of money in the liquidation of her indebtedness.

This is the manner in which the payments were applied by Mr. Tonkel. By crediting the principal of the note due January 1, 1920, with the payments as the same were made during 1919, leaves a balance due on the principal on January 9, 1919, of three thousand seven hundred sixty-five dollars and twenty-four cents and one year's interest of

three· hundred eleven dollars and fifty-two cents, after deducting total amount of interest on the several payments from the dates made to January 9, 1919, amounts to thirty-one dollars and twenty-six cents, leaving a balance of interest due on this note of two hundred eighty dollars and twenty-six cents. This added to the balance of the principal leaves a total of principal and interest due on this note by Mrs. Shields, on January 9, 1919, of four thousand forty-five dollars and sixty-two cents. (This computation is shown on page 66 of the record.)

Thus applying the payments in the manner as contended for by the appellee, as shown on page 59 of the record, we find a balance of three thousand nine hundred ninety-eight dollars and seven cents due on the principal of the note on January 9, 1919, and fifty-five dollars and twenty-three cents interest, making a total balance on this note from that date of four thousand fifty-three dollars and thirty cents.

So it will be seen by applying the payments as the same was applied by the appellant Tonkel, there was seven dollars sixty-eight cents less due on Mrs. Shield's note on January 9, 1919, than was due if the payments were applied as contended for by appellee, as shown on page 59 of the record.

Therefore, under the rules laid down by this court and consistently followed in its practice, the method of application of the payments adopted by appellant Tonkel in this case was the most beneficial to Mrs. Shields, the debtor, and was therefore correct.

This court, we think, has announced this as a correct principle in its case. *Scott* v. *Cleveland,* 33 Miss. 447. The case of *Star* v. *Richmond,* 38 Ill. 276, 83 Am. Dec. 189, is a case which is identically similar to the case at bar in principle.

In reversing the judgment of the lower court in the case based upon the report of the master, the supreme court of Illinois stated the rule as follows: "It appears to be more equitable and just that when the holder receives money

before it is due on demand drawing interest that it should be applied, in the absence of an agreement to the contrary, to the principal. Otherwise, by lending the sum thus received he would in effect compound the interest or have placed at interest before its maturity a larger sum than his original claim. In other words he would receive interest on the maker's money as well as on his own. After the principal and interest both become due it would be otherwise. The court below, we think erred in applying any portion of the payment made before the maturity of the note to 'the extinguishment of interest but should have appropriated the whole of the payment to the principal." See, also, *Davis* v. *Fargo Clark* (N. Y.), 470; *Ross* v. *Rees,* 19 Ky. Law, 1215, 43 S. W. 215.

No sufficient tender of any character was ever made by Mrs. Shields of the amount admitted by her to be due Mr. Tonkel. Several days after the due date of the interest, Mr. Fletcher, business agent of Mrs. Shields, sent to the Bank of Shaw and to Mr. Tonkel checks for the amount he contended was due to Mr. Tonkel, which checks in each instance were promptly returned to him. No money nor currency was ever tendered or offered to be tendered, the mere mailing of the checks, as above stated, being the only offer of payment made by Mrs. Shields or by Mr. Fletcher for her to pay the amount of interest which she was due.

It is too elementary to require citation of authorities that an offer to pay money by check or draft is not a tender sufficient in law. *Collier* v. *White,* 67 Miss. 133.

Not having paid or sufficiently tendered even the amount admitted by Mrs. Shields to be due up to the time Mr. Tonkel exercised his option to declare the entire indebtedness due, Mrs. Shields could not prevent foreclosure by paying the amount of interest due up to January, 1919. but could only prevent foreclosure by paying the entire indebtedness both principal and interest. After the debt has been declared due it is too late for the defaulting debtor to perform his broken covenant and restore his previous *status.* Before the option is exercised to declare the

debtor in default he may be relieved by performance. After declaration of maturity the status is fixed and performance does not reinstate the original maturities of the debt. *Caldwell* v. *Kimbrough,* 91 Miss. 909.

The only offer to pay anything by Mrs. Shields having been made through the medium of checks or drafts, which were promptly returned, we think it beyond dispute that no tender which was sufficient in law was ever made by her before Mr. Tonkel declared the entire indebtedness due under the terms of the trust deed. For this reason there is no equity in the bill.

The amount of money admitted by Mrs. Shields to be due is not paid into court with her bill. In order to claim the benefit of a tender, the tender once made must be kept good. This principle was reannounced by this court in the case. *Crittenden* v. *Ragan,* 89 Miss. 185; *M. & O. R. R. Co.* v. *Mosley,* 52 Miss. 137; *Lewis* v. *Bogue Chitto,* 76 Miss. 356; *Rush* v. *Pearson,* 92 Miss. 153.

The equity of the rule requiring tenders to be kept good by paying the money into court is peculiarly emphasized by a consideration of the rule in connection with a decree entered by the chancery court in this case. The rule requiring the tender to be made by the payment of the same into court is just and equitable; is a firmly established part of our jurisprudence and must be complied with by a person seeking injunctive relief.

The contract in this case was fairly and voluntarily entered into by the parties. The appellant Tonkel was well within his rights in accelerating the maturities of the several notes upon the failure of Mrs. Shields to pay the interest due thereon the due date thereof. *Caldwell* v. *Kimbrough,* 91 Miss. 877; *Taylor* v. *Alliance Trust Co.,* 71 Miss. 694; *Denton* v. *Sharp,* 71 Miss. 850; *Toler* v. *Gray* (recently decided, opinion not published).

First. The payments made, arising from the sale of the timber from the mortgaged premises in August, September and October, 1918, were properly credited on the prin-

cipal and Mrs. Shields never at any time in any manner offered to pay the amount due by her as interest on the indebtedness on January 9, 1919.

Second. There was never any tender sufficient in law made by Mrs. Shields or any one for her. The only offer to pay any sum ever made by her was by check or draft, which does not constitute a tender sufficient in law.

Third. Mrs. Shields fails to pay into court the amount admitted by her to be due, which failure to pay the money into court operates as an abandonment of any alleged tender made by her.

For these reasons. Mr. Tonkel had a right to exercise his option to declare the entire indebtedness, both principal and interest due and to foreclose to enforce payment thereof. The decision of the learned chancellor in this case was erroneous.

We ask that the decree entered herein be reversed, the motion to dissolve the injunction sustained, the bill dismissed and the appellant awarded his proper damages.

*Everett & Hairston* and *Moody & Williams,* for appellee.

It is conceded that the payments were not applied either by the appellants or the appellees, and therefore the law applied it most favorably to the debtor, and credited all payments that were made on the note that was due January 1, 1920, and in order to ascertain the amount due figured interest on this note for one year and allowed the interest on the payments that were made. The statement, according to this application will be found at page 66 of the record.

Counsel for appellants, in applying the rule that applications will be made in the manner most beneficial to the debtor arbitrarily states that it would be most beneficial to the creditor to settle according to Tonkel's figures on January 1, 1920, but he overlooks, in this settlement, the fact that the first principal note was not due until January

1, 1920, and that this controversy arose in trying to arrive at what was the just interest due on January 1, 1919. We take it that if separate notes had been executed, representing the interest, accruing on this contract, as hereinabove set out, and if appellee had executed her note for one thousand five hundred seventy-seven dollars and fifty-two cents, evidencing the interest payment, which was due under the contract of January 9, 1919, there would be no contest on but that the payments made in the year 1918 should be applied to this note.

We think it is evident that the notes and trust deed must be construed together, as evidencing the entire contract of the parties and considering the fact that no separate interest notes were executed and there was a debt due of one thousand five hundred seventy-seven dollars and fifty-two cents, maturing on the 29th of January, 1919, the rights of the parties were the same as if a separate note had been executed. It will be noted that the payment of this interest due January 9, 1918, was compulsory. If it was not paid, appellee stood a chance to lose her property.

So it occurs to us that the method of calculating, by which the least payment on January 9, 1919, appellee could save her property would be most beneficial to her. But aside from this consideration, under the law, the payment is applied to the debt first maturing. Consideration of the different payments necessary to be made by Mrs. Shields to carry out her contract in this case clearly demonstrates that the first debt maturing was the debt for interest in the sum of one thousand five hundred seventy-seven dollars and fifty-two cents, due January 9, 1919. Even if she had paid all the note due January 1, 1920, without paying the interest accruing January 9, 1919, she could not have saved her property. "Except where equitable principles require a different disposition thereof or where a different application has been made by the parties themselves, it is a well settled rule that a payment should be applied by the court to the oldest debt where

there is more than one debt, that is, the debt first becoming due." 30 Cyc., 1243.

If this rule had been followed without allowing appellee anything for interest on her payments from the time they were made until January 9, 1919, the debt due January 9th would have been reduced to one hundred and fifty dollars and seventy-six cents, and appellant cannot complain since an amount largely in excess thereof was offered to him.

In 30 Cyc., at page 1249, this rule is announced: "Except where otherwise agreed, a payment made on an indebtedness consisting of principal and interest, not applied by either the debtor or creditor, will be applied first to the interest due and then to the principal."

We think it clear that the text writer had in mind a case where the principal debt and the interest on same matured at the same time, and that this is in conflict with the principle holding that the first debt due should have preference in the application of payments. 30 Cyc. 1250.

The text in ruling case law is squarely supported by the case from the supreme court of Indiana in *Jacobs* v. *Ballenger,* 15 L. R. A. 169. We take it that in view of the above authority, the appellee was entitled to have discharged from her payments, first interest accrued at the time of the payments, and the balance of each payment to be applied to the principal of the debt, and while she might have contended for more, certainly she was entitled to this much.

Sufficiency of the tender. The testimony shows that Mrs. Shields' agent offered the money to Tonkel in sufficient amount, she tendered the money into court with her bill, and shows without controversy that she had been ready all the time to pay the money, if Tonkel, or his attorneys would take it.

Also that when the checks were returned by Tonkel they were returned solely on the ground that they were not the right amount, and no objection was made to the fact that payment was made by check. Also it was shown that the

checks were perfectly good. The supreme court of Mississippi, in the case of *Wesling* v. *Noonan*, states: "It is next urged that the plaintiff, at the time he offered to pay the charge on the articles purchased, did not make, in a legal sense, a tender of money; inasmuch as the money was not counted, or in fact offered to the defendant. The rejection of the proposition by the defendant, rendered it unnecessary to count the money or to make any further tender of it. It was equivalent to saying to the plaintiff, that his money would not be received if actually offered. 31 Miss. 599. This is the general law on the subject. 38 Cyc., 145; *Bonaparte* v. *Thayer* (Md.), 52 Atl. 496, 26 R. C. L. 638.

In the present day it is a matter of common knowledge that practically all the business that is transacted is handled on checks, and it is clear that, in this case, the tender made was amply sufficient. We have no quarrel with the authorities cited by counsel as to the acceleration of payments, because that question is not involved in this case since the record shows that all amounts due were offered to Tonkel at the time due.

In this case the property bought by the appellee had greatly enhanced in value and it appears that what appellant wanted was not the money due him on the contract, but the forfeiture of the contract, in order that he might regain possession of the property. We do not think a court of equity could lend its aid to a scheme of this sort, but that the court below properly decreed that the injunction should be made perpetual. The court will bear in mind that the controversy here is not over the money due on January 9, 1919, but as to that the record shows that appellee has always been ready and willing to pay this money if Tonkel would receive it; but the proposition is, whether or not she had made default, and appellant was entitled to foreclose his trust deed. If he was entitled to foreclose it and we submit that appellee had made every effort to get a fair adjustment of the proposition and pay every cent that was due, then the injunction

was rightly sued out and rightly made perpetual. The chancellor heard the evidence, observed the witness and from that drew his conclusions, holding that the appellee had endeavored in every way to comply with her agreement and had not forfeited any right; that she was prevented from complying with it strictly by appellant arbitrarily refusing to accept the money. That being the case, we respectfully submit that the decree appealed from should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellee filed a bill for injunction to prevent the appellant from advertising and selling certain lands under a deed of trust executed by the appellee to the appellant for the purchase money of certain lands. The deed of trust was for twenty-six thousand five hundred dollars and interest payable annually on all of said notes on said date, and the notes called for attorney's fees, etc. It was further stipulated in the deed of trust that if the grantor therein failed to pay the said notes or any of them or any part thereof, or all or any part of the annual interest thereon when due, or failed to carry out the covenants and agreements therein contained, that the lands might be sold at public outcry, etc.

It was further agreed that the grantor in the deed of trust, the appellee, or her assigns, shall have the right to cut and remove all of the merchantable timber located on said lands and to dispose of same, provided and with the understanding that she should apply to the credit of the above notes the following *pro rata* of all of the proceeds derived from the sale of said timber, that is to say five dollars per thousand feet for all red and white oak, ash, and hickory removed from said lands; that said payments applied on said notes were to be made as soon as the timber was placed on a railroad right of way and a sale made thereof, and that as soon as such sale is made that a credit shall be immediately placed in the Bank of Shaw, of Shaw,

Miss., to the account of M. Tonkel, or the holder of said notes, to be applied to the payment of the notes therein secured. It was further stipulated that in case the timber was sold and diverted without the consent of Tonkel or the holder of the notes that Tonkel or the holder of said notes may then, at any time thereafter before the debt is fully paid and satisfied, request the trustee to take possession and make a sale.

After the execution of the deed of trust the appellee sold certain of the timber, and paid, or caused to be paid, the amount stipulated to the Bank of Shaw, said amount being paid at different times during the summer and autumn of 1918, and were placed by Tonkel or the bank as a credit on the note first maturing. Just prior to the time the first payment was due appellee's agent called up the Bank of Shaw and requested the bank to send a draft for the amount of interest due to the Bank at Indianola, Miss., and that same would be paid by said agent. The Bank at Shaw thereupon made out a draft for one thousand five hundred and forty-six dollars and sent it to the Bank at Indianola, Miss. Mr. Fletcher, appellee's agent, caused the draft to be returned, with notation indorsed thereon that it was for too much, and that the correct amount due was one thousand three hundred and twenty-one dollars and ten cents, and that he would honor a draft for that amount. The Bank at Shaw thereupon made out a second draft for some amount slightly different from the original draft, and returned that to the Bank at Indianola. The appellee's agent indorsed on that draft that it was still too much, and that the true amount, according to the calculation of himself and the cashier of the Bank at Indianola was that it should be for one thousand three hundred and twenty-one dollars and ten cents, and that he would pay that amount. Afterwards Fletcher sent a check/ for one thousand three hundred and twenty-one dollars and ten cents, payable to the Bank at Shaw or bearer, with notation, "Interest on notes due M. Tonkel by Mrs. Ollie Shields." This check was returned and, on

the 31st day of January, Fletcher wrote the Bank at Shaw inclosing a check for one thousand three hundred and twenty-one dollars and twenty-three cents for interest due M. Tonkel on the note due on the 9th of January by Mrs. Ollie Shields, and in which he stated that he had very carefully gone over the calculations and sent the dates and amounts of the credits upon which he based his calculations of the amount then due. On February 2d Fletcher wrote M. Tonkel a letter, stating that he had offered to pay one thousand three hundred and twenty-one dollars and twenty-three cents a second time, and that his check has been returned to him, stating that Tonkel had refused to accept the same, and stating, further, that he did not know how Tonkel figured the interest, but that he (Fletcher) had figured it very carefully, and then had the bank to figure it, and that their figuring corresponded, and stated that he was returning the check, and, if Tonkel would advise him how he figured the interest and show that Mrs. Shields owed more than the amount of the check, that he would be glad to send the balance. On February 4th this letter was answered by Mr. Tonkel's attorney, stating that the notes had been turned over to him for collection, and that Tonkel had exercised his option on the deed of trust and declared the entire indebtedness due and payable, and that he would enforce the payment of the entire amount, and saying, further, that the indebtedness was payable at the Bank of Shaw, and that it was Fletcher's duty to come there and adjust the matter if he had any grievances, and that it was not Mr. Tonkel's duty to come to him; that the matter had dragged along a month past due and that the collection would be foreclosed by foreclosure proceedings, stating:

"It looks like you are hankering for a lawsuit and, if so, we will accommodate you."

Appellee's attorney answered this letter, stating that he had sent the amount of one thousand three hundred twenty-one dollars and twenty-three cents, the amount of interest due according to the appellee's way of figuring, and that

Mr. Fletcher had offered to pay the amount and also any other amount due if Mr. Tonkel would only show him his way of figuring the interest; that the difference between them amounted to more than two hundred dollars, but Mr. Tonkel preferred to try and foreclose the deed of trust when not a single note was due rather than to enter into a discussion about the matter to show how he figures Fletcher out of two hundred dollars more interest than Fletcher can figure the same; that they were willing to pay Tonkel what was due, and have been willing to do this, and offered it to him; that they were willing to pay the full pound of flesh, but did not propose to give any blood, as the bond does not stipulate for it.

Foreclosure proceedings were instituted by advertising the property for sale, and an injunction followed; the bill offering to pay the amount due, but not actually carrying the money into court. A motion was made to dissolve the injunction, and evidence taken thereon showing that applying the payments on the partial payment plan by reducing the interest then accrued sustained the complainant's position; the appellant showing that applying the payments according to the partial payment rule, first paying the interest accrued to the time of the payment and the balance on the principal, and calculating new interest on the new principal so obtained to the next payment, and so on, sustains the complainant's theory as to the amount really due at the time. The appellant's contention was and is that the payments were applied on the principal, and that he was not called on to apply it to the interest other than the first note due, and that, so treating it, his contention of the amount of interest due would be correct. Appellant also contends that there was no tender of any money at all, that a check is not good as a tender, and, as the money was not tendered, that he was acting within his rights in advancing the maturity of the deferred note under the terms of the deed of trust. He also contends that no money was paid into court, and that for this reason it was error to sustain the contention of complainant, and

refused to dissolve the injunction. Under the terms of the instrument the entire interest was due annually, on the 9th day of January, 1919, and each year thereafter. and that the 1919 interest payment was the first indebtedness in point of time which matured.

We think the correct rule to apply in the present cause is to apply each payment to the amount of interest which had accrued or been earned on the entire series of notes to that date, and, if any was left, then the balance to be prorated among the several notes in accordance with the stipulation in the deed of trust. Our statute on partial payments (section 2681, Code of 1906, section 2079; Hemingway's Code) provides as follows:

"When partial payments are made, the interest that has accrued to the time of payment, if any, shall be first paid, and the residue of such partial payment shall be placed to the payment of the principal."

The words in the statute, "the interest that has accrued to the time of payment," mean that the interest that has been earned, though it may not be yet due, will be first paid.

The general rule in applying payments is that it is applied to the item that first matures in the absence of any stipulation as to how it is to be applied, or any actual application of it at the time of the payments. This construction of the statute is in accord with the chancellor's view on this question as reflected in the result of his decision. This being true, the complainant was not in default as to the amount due. There was no rejection of the check because it was a check and not money. It is quite clear that the check was not accepted solely because it was not for the amount contended for by the appellant. The proof shows that the check was absolutely good, and would have been promptly paid, the appellee having the money in the bank for this purpose, and if the check had been declined on the count that it was a check and not money, it would have been promptly replaced with money. However, that question would not have arisen in this case had

the appellant drawn his draft for the correct amount, for the bank would have paid the draft with money if demanded. Whether the amount offered in the check by the appellee was the correct amount or not as a fact, it is quite clear from the record that the appellee believed in good faith it to be the correct amount, and the stipulations in the deed of trust, giving the grantee the right to advance the payments after a default in the payment, never stipulated that he would have a right to advance them, and make all of them mature when there was a *bona-fide* dispute between them as to the correct amount, and this is especially true where a party declines to disclose his method of figuring the amount due. This being true, and the appellant having undertaken to foreclose the mortgage when he had no right so to do, the injunction was properly issued to prevent his so doing. The bill offers to pay the amount, and the appellee had repeatedly offered and tried to get accepted the payment of the amount which he claimed was due, and had utterly failed to get the appellant to show wherein his figures were wrong.

While the proper practice is always to pay an amount conceded to be true into court with the bill, a failure to do so in the present case would not prevent the injunction being retained, because it is perfectly evident from the record that the money was available to the appellant at any time he chose to take it. He was seeking to take a drastic step by advancing all the notes to maturity, and in so doing he was seriously handicapping the appellee in handling the property in order to carry out her contract with himself. It would seem from the record that the property subsequent to the sale to the appellee had repeatedly advanced in market value, and that it would be very profitable to the appellant to acquire this property, and greatly damaging to the appellee to have to pay all of this money because of a slight discrepancy, relatively speaking, between the contentions of the two parties. We believe the chancellor reached the correct conclusion on the facts of this record, and the judgment will be affirmed.

*Affirmed.*