JOHNSON *v.* GORE, et al.

No. 39573 June 13, 1955 80 So. 2d 731

*Ben Owen, H. T. Carter,* Columbus, for appellant.

*William G. Burgin, Jr., Sams & Jolly,* Columbus, for appellees.

KYLE, J.

This case is before us on appeal by Tollie Johnson, complainant in the court below, from a decree of the Chancery Court of Lowndes County dismissing with prejudice his original bill of complaint against A. E. Gore, and William G. Burgin, Jr., trustee, defendants in the court below, for a discovery and an accounting and to set aside the foreclosure under a power of sale of a mortgage deed of trust on land.

The mortgage deed of trust, which was foreclosed by the trustee on February 7, 1953, was a deed of trust on 640 acres of land in Lowndes County executed by the appellant and his wife on November 15, 1950, to secure an indebtedness of $8,490.56, evidenced by a promissory note payable to the appellee Gore of even date therewith, and becoming due three years after date, and bearing interest at the rate of six per cent per annum from date until paid, the interest being payable annually on November 1st of each year. The deed of trust provided that the mortgagor should keep the buildings located on the land insured against loss or damage by fire or windstorm. The deed of trust also provided that if default should be made in the payment of any installment of principal or interest, when due, or in the payment of the premium on such insurance policy, or in the payment of taxes, when due, the entire indebtedness secured thereby should become due and payable immediately at the option of the mortgagee. The trustee's deed of foreclosure, dated February 7, 1953, recited that default had been made in the payment of interest accruing on the indebtedness secured by the deed of trust, and also in the covenant to keep the buildings located on the lands insured against loss by fire or windstorm, and in the payment of ad valorem taxes assessed against the land; and that the mortgagee had elected to declare the entire in-

debtedness secured by the deed of trust to be due and payable immediately.

The trustee's sale was made on February 7, 1953. The appellee, A. E. Gore, the mortgagee, became the purchaser of the land at the foreclosure sale for the sum of $9,000. The bill of complaint to set aside the trustee's sale and for a discovery and accounting was filed on April 20, 1953.

The record shows that the indebtedness secured by the above mentioned land deed of trust represented a loan made by the appellee Gore to the appellant to enable the appellant to pay off a prior mortgage indebtedness on the land due and owning to Mrs. Ruth G. Bush, in the sum of $7,635.51, and an open account due and owing by the appellant to the appellee Gore in the sum of $851.30, and recording and notary fees amounting to $3.75. Prior to the execution of the land deed of trust, the appellee Gore had taken up a note for the principal sum of $1,100 executed by the appellant as maker to W. D. Bishop and O. P. Shackelford, which was dated March 30, 1950, and was secured by a chattel mortgage deed of trust on live stock, a 1941 Model Chevrolet truck, and the crop produced on the Tollie Johnson land during the year 1950. The appellee Gore showed in his accounting that he had paid to Shackelford and Bishop the sum of $955.70, when the note was assigned to him on October 9, 1950.

At the time of the execution of the above mentioned land mortgage deed of trust by the appellant and his wife to the appellee Gore the appellant was in jail at Aberdeen awaiting confinement in the Federal penitentiary. He had been in jail since October 5. Mrs. Bush had demanded payment of the indebtedness due and owing by the appellant to her, and the appellant had requested the appellee Gore to take up the indebtedness and carry the same for a period of three years. The appellee Gore agreed to do that, and the note for $8,490.56, which included the amount already owing by the appellant to

the appellee Gore was executed by the appellant and his wife pursuant to that agreement.

The appellant was transferred from the Aberdeen jail to the Federal penitentiary soon after the note and mortgage deed of trust were executed, and he did not return to Lowndes County until February 23, 1951. Meanwhile, the appellee Gore with the appellant's consent, sold timber on the 640-acre tract of land to the amount of $2,016.34. The timber was paid for in six installments between December 2, 1950, and January 27, 1951. The appellee Gore also collected the appellant's farm income for the year 1950 which amounted to $608.52.

The appellant returned to his home on parole on February 23, 1951, and was in charge of his farming operations during the remainder of the year. But on January 25, 1952, the appellant's parole was revoked and he was returned to the penitentiary, and Gore again took charge of the appellant's farming operations. It appears that Gore had no agreement with the appellant concerning the furnishing of tenants on the Johnson farm or the disposition to be made of the crops produced during the year 1952. But Johnson remained in the penitentiary throughout the remainder of the year and Gore made advancements of supplies to carry on the farming operations and received Johnson's part of the crops.

During the month of November 1952 O. P. Shackelford, who had received a letter from Johnson asking him to pay off the A. E. Gore indebtedness for him, requested the trustee to furnish him information concerning the amount of the indebtedness. The trustee obtained a statement of the indebtedness from Gore and advised Shackelford as to the amount due. The trustee at the same time sent to Johnson by mail a statement of the indebtedness, which had been prepared from the information furnished by Gore. This statement showed principal and interest owing on the land indebtedness in the total sum of $9,539.99. There were no credits on the land note and deed of trust account. The statement

contained, however, a "chattel mortgage" account, which inlcuded as debits, bill paid to Bishop and Shackelford $1,100; truck, groceries, cash, hardware, fertilizer and furnishings, $1,747.30; interest to November 1951, $170.83; trip to Aberdeen and selling timber, $35; hay, $75; hay, $40; taxes for 1951, $101.56; furnishings for 1951 and 1952, $307.39. The credits shown on the chattel mortgage account were: Timber, $2,001.10; balance on crop for 1950, $398.28; rent received from 1951, Stringfellow and Bailey, $340.79, and balance due November 1951, $887.12. The statement showed that the crop for 1952 had not been sold or credited.

After his lands had been advertised for sale by the trustee, Johnson succeeded in obtaining a release from the penitentiary and returned to Lowndes County on February 5, 1953, two days before the foreclosure sale. He immediately contacted the trustee and Gore for the purpose of obtaining an extension of time for the payment of the mortgage indebtedness and thereby avoiding a foreclosure sale of the land. But Gore refused to authorize the postponement of the sale, and demanded payment in full of the indebtedness secured by the mortgage deed of trust.

The bill of complaint in this cause was filed on April 20, 1953. The complainant alleged in his bill that the indebtedness secured by the above mentioned deed of trust was not due at the time of the foreclosure sale; that the defendant Gore, with the permission of the complainant, had sold the timber on the land and had collected the purchase price of the timber which amounted to $2,001.10, which was sufficient in amount to pay all amounts that had matured under the land deed of trust prior to the foreclosure sale, and that in addition thereto the complainant had paid to the defendant a part of the proceeds of the crop produced on the land during the year 1950, and the rents received for the year 1951 from two tenants living on the land, and that the defendant had also received the complainant's part of the crop pro-

duced on the land during the year 1952. The complainant also alleged that he had requested that the defendant Gore render an accounting to him, but the defendant Gore had refused to do so. The complainant admitted in his bill that he owed the defendant Gore some money for goods sold and delivered in 1950, 1951 and 1952, and for sums of money loaned to the complainant during those years. The complainant alleged that the exact amount of the indebtedness was unknown to the complainant and the information relative thereto was in the exclusive knowledge of the defendant Gore. The complainant alleged that after the trustee had begun to advertise the land for sale, the complainant obtained a release from the Federal prison and returned to Lowndes County two days before the foreclosure sale and immediately contacted the defendant Gore and asked how much money would be required to stop the foreclosure of the deed of trust, and that the defendant Gore stated to him that the entire amount secured thereby would have to be paid, and that he would accept no lesser amount than the original principal with interest thereon to February 7, 1953, and the expenses of the foreclosure. The complainant asked the defendant Gore to render an accounting of all sums owed to the defendant Gore by the complainant and of all sums paid; but the defendant Gore wholly refused to do so and proceeded to foreclose the deed of trust on February 7, 1953. The complainant stated in his bill that the defendant Gore had paid the ad valorem taxes on the lands for the year 1950, 1951 and 1952, and that the amounts so paid should be set off against the sum paid by the complainant to the defendant Gore. The complainant in his bill asked that the foreclosure sale be set aside and that the defendant Gore be required to make discovery and render a full and true accounting under oath of the items of indebtedness included in the above mentioned land deed of trust; and all specific items claimed by the defendant Gore to be due and owing to him in addition to the amount secured by

the land deed of trust, and all items paid by the complainant to the defendant Gore, or otherwise received by the defendant Gore for the account of the complainant; and that the court determine and adjudicate the amount of the indebtedness lawfully due and owing by the complainant to the defendant Gore and what part of same was secured by the land mortgage deed of trust. The complainant also asked for general relief.

The defendant Gore filed his answer on July 28, 1953, and incorporated in his answer an accounting of the indebtedness alleged to be due and owing to him by the complainant. The defendant denied that the foreclosure of the deed of trust was wrongful, or that the complainant was entitled to the relief prayed for in his bill. The defendant made his answer a cross bill, and asked for a decree against the cross defendant for an alleged balance still due and owing to him in the sum of $1,527.23, together with an additional sum of $450 for the use and occupation of the property. The defendant as cross complainant also asked for a decree cancelling as a cloud on his title to the land all claims of the cross defendant, and that he be put in possession of the property.

In the account rendered by Gore in answer to the discovery provisions of the bill of complaint, the item of indebtedness paid to Shackelford and Bishop was listed at $955.70 instead of $1,100, as shown on the statement mailed to Johnson in November 1952. The interest charge of $170.83 for the year 1951 shown on the November 1952 statement was omitted entirely. The account showed a net surplus for 1952 to be applied on the land deed of trust deficiency in the sum of $570.13. The land mortgage indebtedness was shown as $9,624.14, exclusive of attorney's fee and expenses of foreclosure.

The cause was heard by the chancellor on the pleadings and proof; and at the conclusion of the hearing the chancellor found that the complainant had failed to insure the property and had failed to pay the taxes for the years 1950 and 1952, and had failed to pay on the

due date thereof the interest accruing on the indebtedness secured by the deed of trust; and the chancellor found that the defendant Gore had a right to accelerate the maturity of the indebtedness and to foreclose the deed of trust.

The chancellor found that the parties had agreed that the defendant Gore should collect the proceeds of the sale of the timber and apply the same toward the payment of the Shackelford and Bishop note and chattel mortgage, and then toward the purchase of a vehicle for the family of the complainant, and that any balance then remaining should be applied on the land deed of trust indebtedness. The chancellor found that the vehicle had not been purchased by the defendant. And the chancellor applied the sum of $592.42 out of the funds derived from the timber sales to the payment of the balance due on the 1950 furnish account, including the Shackelford and Bishop note; and the chancellor then applied the balance of the funds derived from the timber sales on the land mortgage indebtedness, first, to the payment of the interest accrued to the date of the last sale of timber on January 27, 1951, and secondly, to the reduction of the principal of the indebtedness.

The chancellor found that after the proceeds of the sale of the timber had been applied, as thus stated, the total principal and interest due on the land mortgage indebtedness at the time of the foreclosure sale was $8,292.41, and that the attorney's fees and foreclosure expenses amounted to $858.85; that the total amount of the purchase price for which the land was sold was $9,000; and that there was still due and owing to the defendant Gore the sum of $151.26 as the unpaid balance of the land mortgage indebtedness. The chancellor found that the complainant owed the defendant Gore the sum of $596.99 balance on the furnish account for the years 1951 and 1952. The chancellor dismissed the complainant's original bill, and awarded to the cross-complainant Gore a deficiency judgment for $748.25.

The appellant has assigned and argued ten points as ground for reversal on this appeal. The first three points are as follows: (1) That the court erred in upholding the accelerated foreclosure of the mortgage deed of trust which was foreclosed by the appellee Gore, who was a mortgagee in possession, without a correct accounting being rendered to the appellant; (2) that the mortgagee waived his right to accelerate the maturity. of the principal of the indebtedness on account of the nonpayment of taxes and insurance; and (3) that the court erred in approving the foreclosure sale of the land at a time when the mortgagee had in his hands the appellant's 1952 crop, which was later sold for $583.06, cash rent received from one of the tenants in the sum of $175, and the appellant's truck, which was later sold for $375.

The appellant's attorneys argue in support of their first assignment of errors that the appellee Gore's liability to account was that of a mortgagee in possession. The appellee's attorneys, on the other hand, deny that Gore was in actual possession of Johnson's property as a mortgagee in possession.

 █ It is not necessary for us to undertake to determine at this time whether Gore was in fact a mortgagee in possession during Johnson's imprisonment or not. We think the chancellor erred in upholding the accelerated foreclosure of the mortgage deed of trust by the appellee Gore under the facts disclosed by the record. Whether Gore was acting as a mortgagee in possession, or as Johnson's agent, or merely as a secured creditor handling the property of his debtor with the debtor's permission, while the debtor was in prison, the record shows that Gore had charge of the collection of Johnson's rents during the fall of 1950, and the sale of Johnson's timber in December 1950 and January 1951, and that Gore handled the farming operations during the 1952 crop season, furnishing money, merchandise and supplies to Johnson's family and the tenants on the land and receiving the rents and Johnson's part of the crops during the fall

of the year. In view of these facts, it was Gore's duty to render to Johnson a substantially correct account of the indebtedness claimed to be due and owing to him before undertaking to declare the full amount of the land mortgage indebtedness due ten and one-half months prior to its due date; and this Gore failed to do. █ The only account rendered to Johnson prior to the foreclosure sale showed no credits of any kind on the land mortgage indebtedness, although the chancellor found after the sale that approximately $1,400 of the proceeds of the sale of the timber should have been credited upon the land mortgage indebtedness. There were other errors in th "chattel mortgage" account, which were not carried forward into the account later filed with the court. Gore admitted that there were items in dispute about the account at the time of the foreclosure. When Gore elected to declare the full amount of the indebtedness due, because of the alleged defaults in the payment of interest and taxes, Johnson was entitled to know the amounts that were in arrears. And Gore was the only person who could furnish that information. While the record disclosed no actual fraud in Gore's accounting, there were glaring defects in the account, and it was inequitable and unjust for Gore to attempt to declare the entire indebtedness due and payable ten and one-half months before its actual due date, because of default in the payment of interest and taxes, without furnishing Johnson a correct statement of the amount due so that he might know what amount he had to raise to prevent a foreclosure sale of his property.

 █ The right to foreclose a mortgage deed of trust under a power of sale ordinarily is not affected by the motives of the mortgagee in seeking foreclosure, economic conditions, or by the fact that hardship will result from foreclosure. 59 C. J. S., p. 803, Mortgages, par. 500.

 █ Equity will not relieve the mortgagor from the consequence of a default unless the mortgagee has done some act which makes it unconscionable for him to take

advantage of it. Jones on Mortgages, Eighth Edition, Vol. 2, p. 1005, par. 1517. ▮▮ ▮ But, it is generally accepted that a court of equity has the power to relieve a mortgagor from the effect of an operative acceleration clause in a mortgage where the default of the mortgagor was the result of some unconscionable or inequitable conduct of the mortgagee.

In the case of French v. Row et al., 28 N. Y. Supp., 849, the Court held that, where a mortgage provided that on default of payment of interest the whole debt should become due and payable at the option of the mortgagee, the mortgagor would be relieved from the effect of such provision where it appeared that he supposed that the interest had been paid, that the mortgagee had been accustomed to receive it from one to six months after it became due, and that the mortgagee's purpose in declaring the whole debt due was not to secure prompt payment of his interest, but to compel the mortgagor to convey the mortgaged property to him. In Rathbone v. Forsyth (1916), 171 App. Div. 26, 156 N. Y. Supp. 888, the mortgagors made payments on interest not yet due, though part of the principal was then due. The mortgagees accepted the payments without insisting on their right to the payment of the overdue principal, and later sought to declare the whole amount of the mortgage debt due by reason of the failure of the mortgagors to pay the installment of principal. Foreclosure of the mortgage was denied, however; the court stating that, though a mortgage clause for acceleration of the due date on account of default in the payment of an installment may be enforced, the courts will see that it is fairly enforced and that an unconscionable advantage is not taken.

The court in Wilcox v. Allen (1877), 36 Mich. 160, in referring to the usual optional acceleration clause for default in matured interest, said: "We are all clearly of opinion that advantage can only be taken of a clause of this kind in a case where there can or ought to be no

reasonable dispute between the parties as to the amount due and unpaid. Where the mortgagor, in good faith and upon reasonable grounds, denies his liability to pay interest, or, if he is so liable, claims it to have been paid, he cannot thus be made liable, even although it should turn out that he was in error. This clause is in the nature of a forefeiture or penalty. Its object is to punish for a wilful neglect of a clear duty, and to hold it applicable to and apply it in a case where there was an honest dispute would be harsh and unjust, and contrary to all well-settled equitable principles.'' See also Adams v. Rutherford (1885), 13 Or. 78, 8 Pac. 896; Forest v. Masonic Hall Asso. (1893), 3 Cal. Unrep. 720, 31 Pac. 903; Blackman v. Carey (1921), 192 Iowa, 548, 185 N. W. 87.

In the case that we have here, Gore testified that the agreement that he had with Johnson, when Johnson was taken into custody by the Federal authorities, was that he was ''to see after the crop and things after he was gone and take care of then.'' Gore was asked the direct question, ''Did you have much to do in managing Tollie's place, or did you just collect the rent?'' Gore's answer was, ''He told me to see after the place for him while he was gone, and anything I done, anybody I rented to, was all right with him.'' Pursuant to this verbal authorization Gore received the 1950 rents from Johnson's tenants, and settled with the tenants, sold Johnson's timber and collected the proceeds of the sales, furnished supplies to Johnson's wife and son, and fertilizer to the tenants in 1952, while Johnson was in prison, and collected Johnson's rent from Green Bailey and received Johnson's part of the share cropper' crops; and at the time of the foreclosure of the mortgage Gore had the proceeds of Johnson's part of the 1952 crop in his possession.

Under these circumstances we think that by his course of dealings with Johnson, Gore was estopped from exercising the right conferred upon him in the mortgage contract to declare the entire amount of the indebted-

ness due prior to its maturity without first rendering to Johnson a true and correct account of the amounts received by him, and the balance due on the indebtedness, and giving Johnson a reasonable opportunity to pay the past due interest and taxes, and thereby avoid the threatened foreclosure of the mortgage prior to its due date, or to refinance the indebtedness in some other manner, if he could do so.

Johnson had reasonable cause to believe that the funds that Gore had received from the sale of the timber, the collection of rents, and the sales of Johnson's part of the crop, were sufficient to pay the interest on the land note and the taxes on the land during the two years that had elapsed since the deed of trust was executed. And even though Johnson may have been mistaken in that respect, Gore should not have been permitted to take advantage of the acceleration clause where there was reasonable grounds for Johnson to believe that the amounts received by Gore were sufficient to pay the interest and taxes.

In the case of Tonkel v. Shields, 125 Miss. 461, 87 So. 646, a controversy arose between the appellee and the appellant concerning the amount of the interest that was due and unpaid after the note had been credited with the proceeds of the sale of timber. Checks were issued by the appellee for the amounts that he claimed that he owed, but were not accepted by the appellant; and the appellant undertook to foreclose the deed of trust by having the trustee advertise and sell the property after declaring the entire indebtedness due and payable. The appellee obtained an injunction to stop the sale. In affirming the decree of the lower court this Court in its opinion said:

"Whether the amount offered in the check by the appellee was the correct amount or not as a fact, it is quite clear from the record that the appellee believed in good faith it to be the correct amount, and the stipulations in the deed of trust, giving the grantee the right

to advance the payments after a default in the payment, never stipulated that he would have a right to advance them, and make all of them mature, when there was a bona fide dispute between them as to the correct amount, and this is especially true where a party declines to disclose his method of figuring the amount due.''

In the case that we have here, there was not only a bona fide dispute between the parties as to the correct amount of the indebtedness due and owing on the land mortgage at the time of the foreclosure sale, but there was also reason for the appellant to believe that the credits that he was entitled to have entered upon the mortgage would have been sufficient to pay the interest that had accrued on November 1, 1951, and November 1, 1952. The amounts of these credits could be determined only by a proper accounting to be rendered by the appellee Gore, and for the reasons already stated we think that Gore had no right to accelerate the maturity of the unpaid balance of the indebtedness until he had rendered such accounting.

■■■ We think it is clear that the appellee Gore waived his right to declare a forefeiture on account of the failure of the appellant to have the farm houses insured against loss or damage by fire. Gore was asked about the insurance on the building. His answer was, ''He promised to keep up the buildings. As far as insurance, it wasn't agreed on.'' Gore had funds of Johnson's in his hands from time to time during the two-year period, which he might have used to procure insurance on the property, had he desired to do so. But he made no effort to procure such insurance. By his passive acquiescence in Johnson's failure to procure insurance, Gore waived his right to declare a forfeiture on that account.

■■■ As to the payment of taxes, Gore had $2,000 of Johnson's money in his hands, when he paid the 1950 taxes on or about February 1, 1951. Gore paid the 1951 taxes about one year later, and Gore did not elect to

declare the whole debt due at that time. There had been no default in the payment of the 1952 taxes at the time Gore elected to foreclose. Hughs v. Kaw Inv. Co., 133 Miss. 48, 97 So. 465, 31 A. L. R. 727.

The appellees contend, however, that the bill of complaint cannot be maintained in this cause for the reason that no tender or offer of payment of the amount of the indebtedness due under the deed of trust was made, either in the bill of complaint or the appellant's answer to the cross bill. But the bill of complaint alleged that there had been no default in the payment of interest at the time of the foreclosue sale, and the principal amount of the indebtedness did not mature until ten and one-half months after the sale. The bill of complaint was not filed for the purpose of enjoining a sale of the mortgaged property, but for the purpose of setting aside an unauthorized sale attempted to be made prior to the date of the maturity of the indebtedness. It is undoubtedly true, that if a party seeks to enjoin the sale of encumbered property on the ground that only a part of the debt claimed is actually owing, he must tender the amount admitted to be due, in default of which an injunction will not issue. Griffith's Chancery Practice, p. 534, Sec. 522. But in this case no injunction was sought, and it was not admitted that any amount was due on the land mortgage indebtedness at the time the bill was filed.

It should also be noted that the complainant in his bill asked for an accounting, and the mere filing of the bill implied an offer to pay such balance to the defendant as the court might find to be due. 1 C. J. S., 671, Accounting, par. 38 (6), and cases cited.

The appellant's attorneys, as stated above, have argued several other points in their briefs, but it is not necessary that we undertake to discuss those points in detail. We find no fault with the chancellor's reapplication of the proceeds of the sale of the timber, or the chancellor's restatement of the account, other than the

inclusion therein of the expenses of the attempted foreclosure. These expenses should not be charged against the appellant upon the remand of the cause.

For the reasons stated above, the decree of the lower court is reversed and the cause remanded for further proceedings in conformity with the views hereinabove expressed. Upon the remand of the cause to the court below, the foreclosure sale of the land made by the trustee on February 7, 1953, should be set aside and cancelled; the amount of the principal and interest of the mortgage indebtedness still unpaid should be duly ascertained; and the indebtedness being now past due, a decree should be entered ordering a sale of the land for the payment of the indebtedness, unless the indebtedness be paid within such reasonable period of time as may be fixed by the chancellor; and the proceeds derived from the sale of the land should then be applied under the direction of the court to the payment of the indebtedness, and such other orders entered as the chancellor may deem proper under the pleadings.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Arrington* and *Gillespie, JJ.,* concur.