357 So.2d 934 (1978)
NATIONAL MORTGAGE COMPANY
v.
Margaret A. WILLIAMS.
No. 49591.
Supreme Court of Mississippi.
April 19, 1978.
Rehearing Denied May 10, 1978.
Roy D. Powell, Robert W. King, Alex A. Alston, Jr., Jackson, for appellant.
Michael J. Malouf, Jackson, for appellee.
Before SMITH, BROOM and LEE, JJ.
LEE, Justice, for the Court:
National Mortgage Company has appealed from a judgment entered against it by the Circuit Court of Hinds County at the suit of Margaret A. Williams in the sum of three thousand seven hundred eighty-five dollars ($3,785) actual damages and twenty thousand dollars ($20,000) punitive damages. Williams' suit was predicated upon alleged wrongful foreclosures of a mortgage.
National assigns the following errors in the trial below:
(1) The foreclosure(s) by the appellant were valid foreclosure(s) and were commenced and completed at a time when the appellee was delinquent in the installment payments and after she had failed to tender the delinquency and the circuit court erred in submitting the case to the jury on any issue.
*935 (2) The circuit court committed reversible error in overruling appellant's motion for a directed verdict when appellee had rested her case and further committed reversible error when it refused to grant appellee's preemptory [sic] instruction after both parties had rested.
(3) The circuit court erred in submitting to the jury the issue of punitive damages inasmuch as appellant was within its legal right in commencing and concluding the foreclosure and no cause of action accrues when one does what he clearly has a legal right to do.
(4) The circuit court erred in admitting on behalf of appellee evidence of actual damages, including expenses of moving from the property in question, redeeming her property from the moving and storage company, and attorney's fees incurred in defending the foreclosure.

PART I
Assigned Errors 1, 2 and 3 will be discussed under this Part I.
Williams purchased a house in Jackson for seventeen thousand three hundred dollars ($17,300). She executed a note secured by first mortgage or deed of trust on the property, payable in monthly installments of one hundred forty-seven dollars forty cents ($147.40). The loan was guaranteed by the Federal Housing Administration and subsidized under Section 235 of the Federal Housing Act so as to require Williams to pay eighty dollars seventy-one cents ($80.71) of the amount due each month, the Federal Housing Authority paying the remainder of sixty-six dollars sixty-nine cents ($66.69).
Payments began June 1, 1973, and the first several installments were duly paid.
On September 18, 1973 National notified Williams that the note and security instrument had been assigned to it. She was instructed to make future payments to National and was told that she would be credited with the payments she had made to the assignor.
Some time afterward a controversy arose between Williams and National as to the state of the account and the latter rejected and returned to Williams two (2) payments which had been mailed in by her, informing Williams that instead of two payments she owed four (4) payments at that time. Williams steadfastly maintained that the two payments, which she had sent in, made her account current but National continued to insist that she was in default. An offer by Williams to produce her receipts for the alleged missing payments was rejected with the statement from National that "they meant nothing." She was told, moreover, that National would continue to refuse to accept payments unless and until the whole amount claimed by National was paid.
In this condition of stalemate, National began foreclosure proceedings, although Williams continued her attempts to explain and to show that she was not delinquent. National told her that to stop the foreclosure then in progress would cost her more than two thousand dollars ($2,000). At this point Williams offered to make the payments but declined to pay attorneys' fees and publication costs demanded by National.
The foreclosure proceeded to sale and the property was purchased by National. Afterward, National brought suit in the county court against Williams for the purpose of dispossessing her. This suit then came to trial in due course but was dismissed by the court when it developed that at the time of the foreclosure Williams had not been delinquent in fact, but that the apparent delinquency resulted because National had failed to give her credit for payments which she had made to its assignor, the original owner and holder of the note and mortgage.
The general rule with reference to wrongful foreclosures is stated in 59 C.J.S. Mortgages § 491, at 774 (1949):
"A mortgagor is entitled to recover damages for a wrongful or fraudulent foreclosure of the mortgage, as where an unlawful foreclosure is attempted solely from a malicious desire to injure the mortgagor; or he may recover damages *936 where the foreclosure is conducted negligently or in bad faith, to his detriment... ."
The rule is stated also in 55 Am.Jur.2d Mortgages § 535, at 516-517 (1971):
"In general, the authorities support the rule that an action at law by the mortgagor against the mortgagee will lie to recover damages for a wrongful foreclosure  that is, a foreclosure without right, which would ordinarily be ineffective and invalid irrespective of the manner in which it is executed. Generally, in such circumstances, the mortgagor has the right to elect between (1) having the sale set aside and (2) recovering from the mortgagee the damages suffered as a result of the wrongful foreclosure.
Actions at law for damages for premature foreclosures have been sustained, particularly where a required demand of payment was not made to accelerate maturity, although there is authority to the effect that a right to maintain such an action may be lost by electing to proceed in equity for the return of the equity of redemption and obtaining a decree ordering restoration of the property.
There is authority to the effect that an action at law for damages lies for an improper execution of a rightful foreclosure. However, the contrary view, that an action at law does not lie for damages for an improper execution of a rightful foreclosure, has been taken, at least in the absence of a preconceived plan thereby to carry out a fraudulent purpose; the view is that the remedy, if any, is in equity.
Compensatory damages for wrongful foreclosure have been held to be the reasonable market value of the property on the date of foreclosure. Punitive damages have also been allowed where the foreclosure was found to have been pursued with malice.
The remedies in equity for wrongful, improper, or premature foreclosures are considered elsewhere."
In Milner Hotels, Inc. v. Brent, 207 Miss. 892, 43 So.2d 654 (1949), the elements permitting punitive damages were stated as follows:
"The first assignment of error was to the effect that the appellee was entitled to only nominal damages and was not entitled to recover punitive damages. It is well established law in this state that the elements allowing punitive damages are: (1) a wrongful act, (2) intentionally performed, (3) gross disregard of rights, and (4) wilfullness.
This principle was clearly laid down in Illinois Central R. Co. v. Ramsay, 157 Miss. 83, 127 So. 725, 726, where the court said: `To authorize the infliction of punitive damages, the wrongful act complained of must either be intentional, or result from such gross disregard of the rights of the complaining party as amounts to willfulness on the part of the wrongdoer.'
In Hadad v. Lockeby, 176 Miss. 660, 169 So. 691, 693, the court said: `Punitive damages may be recovered, not only for a willful and intentional wrong, but for such gross and reckless negligence as is equivalent to such a wrong, since an act done in spirit of wantonness and recklessness is oftentimes just as harmful as if prompted by malice.'" 207 Miss. at 899, 43 So.2d at 655.
See also Lincoln Nat. Life Ins. Co. v. Crews, 341 So.2d 1321 (Miss. 1977); Progressive Casualty Ins. Co. v. Keys, 317 So.2d 396 (Miss. 1975).
In deciding whether a directed verdict should be granted, the trial judge is to look solely to the testimony on behalf of the party against whom a directed verdict is requested. He will take such testimony as true along with all reasonable inferences which can be drawn from that testimony which is favorable to that party, and, if it could support a verdict for such party, the directed verdict should not be given. Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975); White v. Thomason, 310 So.2d 914 (Miss. 1975); Williams v. Weeks, 268 So.2d 340 (Miss. 1972).
*937 On the first foreclosure there was a question for the jury on actual and punitive damages.

PART II
Assigned Errors 1, 2, 3 and 4 will be discussed under this Part II.
Williams was not delinquent at the time National declared her so, but National refused to accept any monthly installments until Williams again paid the February installment, which was not credited to her account through error of National and its assignor. The monthly installments amounted to $147.40. Williams held an FHA Section 235 certification under which FHA paid $66.69 of each monthly installment and appellee paid the balance of $80.71. Prior to the first foreclosure on October 3, 1974, Williams was advised by National's attorney that payment of more than $2,000 would be required to stop the foreclosure.
When the possessory action was heard on February 12, 1975, it was dismissed after the evidence indicated that appellee was not delinquent and that her February payment had not been credited. The record reflects that, upon dismissal of the suit, National's attorney stated Williams may not have been delinquent then (at time of first foreclosure), but she is now (February 12, 1975), and on that very date National instituted the second foreclosure proceeding. Although National notified Williams on February 18, 1975, that she could pay the total delinquency, plus trustees' fees and publication costs and stop the second foreclosure, no amounts of installments, trustees' fees and publication costs were given to her. Neither was any accounting made to her nor any method of payment suggested. On that date, she was notified by appellant that her FHA 235 certification had expired, but that, if she mailed the reinstatement request promptly, it would be retroactive to the expiration date. This procedure drastically changed the amount required from Williams to bring the indebtedness current.
The financial plight Williams found herself to be in on February 12, 1975 resulted from the conduct of National and, in our opinion, it would be unconscionable to hold that, as a result of National's misconduct, Williams was delinquent on her loan, and the second foreclosure of March 11, 1975, was valid.
In Johnson v. Gore, 224 Miss. 600, 80 So.2d 731 (1955), which involved foreclosure of a mortgage, this Court said:
"In view of these facts, it was Gore's duty to render to Johnson a substantially correct account of the indebtedness claimed to be due and owing to him before undertaking to declare the full amount of the land mortgage indebtedness due ten and one-half months prior to its due date; and this Gore failed to do... . When Gore elected to declare the full amount of the indebtedness due, because of the alleged defaults in the payment of interest and taxes, Johnson was entitled to know the amounts that were in arrears. And Gore was the only person who could furnish that information. While the record disclosed no actual fraud in Gore's accounting, there were glaring defects in the account, and it was inequitable and unjust for Gore to attempt to declare the entire indebtedness due and payable ten and one-half months before its actual due date, because of default in the payment of interest and taxes, without furnishing Johnson a correct statement of the amount due so that he might know what amount he had to raise to prevent a foreclosure sale of his property." 224 Miss. at 614, 80 So.2d at 736.
The Court further held in Johnson that equity will relieve the mortgagor from the consequence of a default if the mortgagee has done some act which makes it unconscionable for him to take advantage of it. Although Johnson v. Gore, supra, was tried in the chancery court, the same principle applies here.
Since the exact amounts to bring the indebtedness current were not given to appellee, and probably were not known by *938 either of the parties, and since there apparently would have been a dispute as to said amounts, the indebtedness was not fixed but was unliquidated and appellee could not have been in default on an unliquidated amount. Furthermore, it would have been vain thinking to expect appellee to tender an amount which was unknown to her.
In Cooley v. Stevens, 240 Miss. 581, 128 So.2d 124 (1961), the Court, quoting from McLain v. Meletio, 166 Miss. 1, 147 So. 878 (1933), said:
"The law does not require one to do a vain and useless thing. A formal tender is never required where it appears that the money if tendered would not have been received." 240 Miss. at 592, 128 So.2d at 128.
The second foreclosure, which resulted from the misconduct of National, was just as wrongful and invalid as the first foreclosure and a jury question on actual and punitive damages was presented as to same.
National contends in its fourth assigned error that the court erred in admitting on behalf of appellee certain evidence of actual damages. We have carefully considered the record covering same, and there is no merit in such assignment.
For the reasons given, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and BOWLING, JJ., concur as to Part I.
PATTERSON, C.J., and SUGG, WALKER and BOWLING, JJ., concur as to Part II.
SMITH and ROBERTSON, P. JJ., and BROOM, J., dissent as to Part II.
COFER, J., took no part.
SMITH, Presiding Justice, dissenting:
I respectfully dissent from the conclusion of the majority that the second foreclosure proceedings were wrongful because I am unable to agree with the majority's analysis of that part of the case.
Apparently, the majority takes an unfavorable view of appellant's conduct because its attorney, upon conclusion of the possessory action unfavorably to appellant, is quoted as having said: "If she was not in default then she is in default now," or words to that effect. Also, there seems to be an implication of improper behavior because foreclosure proceedings were begun immediately with the first notice scheduled to appear one week thereafter.
Since the actions of appellant, both as to the first foreclosure, which proved to have been premature, as well as to the second proceedings, apparently are considered to have been tortuous, for which punitive damages are to be awarded, it should be recalled that the note and deed of trust were executed by appellee in favor of her contractors, and by them assigned to appellant. The error in failing to give appellee credit for the controversial payment was an error of the assignors and not of appellant. There is nothing in the circumstances to indicate malice or bad faith on the part of appellant even as to this situation, although I agree that the jury might have been justified in finding that appellant was negligent in failing to discover what had happened.
When it developed that the first foreclosure proceedings had been premature, because a payment on the debt had been made to appellant's assignors before assignment to appellant, which assignors had failed to enter as a credit, several months had elapsed and appellee not only had made no effort to make payments on the debt but had allowed to lapse an arrangement with a governmental agency whereby the government undertook to pay the major portion of each installment.
This was an ordinary business transaction. Appellee was an adult, represented by counsel, who owed a debt, incurred in the ordinary way of business and secured by real estate. When the second foreclosure was begun, her counsel filed suit in the Chancery Court for an injunction to stay the proceedings, but voluntarily dismissed it for reasons of their own.
Attorneys for appellant wrote appellee's attorney on February 12, 1975 as follows:

*939 Dear Mr. Malouf:
 Re: National Mortgage Company
 and Margaret Ann Williams
 Loan No. 044913
 FHA No. 281-090453-235
Enclosed herewith is a copy of the Substituted Trustee's Notice of Sale on the above matter. You will observe that publication is to commence Monday, February 17, and that the sale date has been set for Tuesday, March 11, 1975.
If Ms. Williams is interested in paying this account current, please contact me relative to the amount required to stop these foreclosure proceedings.
In response to this, no real effort, or any effort worthy of the name, was made by appellee to consult with appellant to find out what was due, and on February 18, 1975, appellant's attorneys again wrote the attorneys for appellee as follows:
 Re: National Mortgage Company
 vs. Margaret Ann Williams
Dear Mr. Malouf:
Your files will show a new foreclosure was started in the above case on February 17th. I have advised and National Mortgage Company has agreed to give Miss Williams credit for the missing payment.
This will not cure the default in the other payments nor will it cure the default and her failure to return the 235 recertification package.
If she desires to keep the property in question, it will be necessary that she pay the total delinquency including Trustee's Fees and publication expense. National Mortgage Company has mailed her a 235 recertification package and if this is returned promptly can reinstate her benefits effective to July, 1974 according to the information furnished to me.
I must emphasize however the need to attend to this matter promptly. If she has no plans for keeping the house, then, of course, all of this gesture is in vain. If she has not received the 235 recertification package by Friday of this week I would suggest you call me immediately.
 Cordially yours,
 Roy D. Powell
There is nothing in the record to indicate any real effort or desire on the part of appellee, (or even ability), to pay the amount due or to find out what it was. Although appellant, in its letters, made it clear that it was willing to assist appellee and aid her in obtaining reinstatement in the government program retroactively, it is clear that she chose to sit back and do nothing and to opt for a lawsuit instead.
The validity of the note and deed of trust is not challenged and this is not altered by the fact that a harsh or unfriendly motive is attributed to appellant in foreclosing at a time when appellee obviously was in default. The result of the conclusion reached by the majority appears to be that an error of appellant's assignors in failing to credit appellee with one payment which had been made to them has relieved appellee of any further obligation to pay her debt and made wrongful the foreclosure of the deed of trust. I do not believe that it is the law in this state that a defaulting debtor after receiving two written communications from the creditor, both indicating a willingness and desire to assist the debtor in making the default good, may sit back and do absolutely nothing and say that the reason she did nothing was because she did not know how much she owed and in that way have her debt cancelled and her note and trust deed voided.
I am unable to discern anything in the case which supports a view that appellant acted maliciously in connection with what appears to have been the perfectly legitimate second foreclosure. In any event, appellant's motive in exercising its legal right to collect its debt from a defaulting debtor and to foreclosure on the security is immaterial.
"The right to foreclose [a mortgage deed of trust under a power of sale] ordinarily is not affected by the motives of the mortgagee in seeking foreclosure, economic conditions, or by the fact that hardship will *940 result from foreclosure." 59 C.J.S. Mortgages § 500, p. 803.
The admission of evidence touching the second, and in my view, valid foreclosure, was highly prejudicial to the right of appellant to a fair trial and should not have been admitted, as it was irrelevant to the real issue in the case. In my humble opinion, the case should be reversed and remanded for a new trial on damages alone, the evidence being limited solely to damages resulting from the premature or first foreclosure.
ROBERTSON, P.J., and BROOM, J., join in this dissent.