749 So.2d 1161 (1999)
TEMPLE-INLAND MORTGAGE CORPORATION, Appellant,
v.
Eddie JONES and Willie Mae Jones, Husband and Wife, Appellees.
No. 97-CA-01418-COA.
Court of Appeals of Mississippi.
August 3, 1999.
*1162 Lem G. Adams, III, Bradley P. Jones, Brandon, Attorneys for Appellant.
William F. Riley, L.H. Rosenthal, Wanda Alexander Williams, Natchez, Attorneys for Appellees.
BEFORE KING, P.J., BRIDGES, DIAZ, AND LEE, JJ.
DIAZ, Judge, for the Court:
¶ 1. This case arises from an October 8, 1997 order of the Adams County Chancery Court finding that Eddie and Willie Mae Jones were in default on their mortgage payments to the Temple-Inland Mortgage Corporation, but that the lender failed to clarify to the borrowers the amount of the arrearage as it accrued and acted with gross indifference to and reckless disregard of their rights in handling the threatened foreclosure. The Joneses were awarded $5,000 in actual damages and $15,000 in punitive damages. Temple-Inland now asserts that the Joneses were not entitled to actual damages because they failed to state a cause of action and provided no proof of damages; the award of punitive damages was contrary to the overwhelming weight of the evidence and unsupported by any proof of actual damages in the record; and that the chancellor erred in relying on Johnson v. Gore, 224 Miss. 600, 80 So.2d 731 (1955), as well as in finding that the lender failed to advise the Joneses of the actual amount of indebtedness and that its actions were "unconscionable and unfair and totally uncalled for," especially in light of his finding that the Joneses were in default. While we sympathize with the Joneses' plight, the record does not support the award of either actual or punitive damages. Accordingly, we affirm the chancellor's finding that the Joneses were in default on their obligation to Temple-Inland, but reverse and render the awards of actual and punitive damages.

*1163 FACTS
¶ 2. In September, 1994, Eddie and Willie Mae Jones refinanced their house in Natchez, Mississippi, by obtaining a loan from First Capital Mortgage Corporation, now Quality Mortgage USA, Inc., in the amount of $88,200. Monthly installments were payable to the servicing agent, Lomas Mortgage, USA. The Joneses apparently were delinquent in their first payment to Lomas, which should have been made in December, 1994. Their mortgage history at Lomas indicates that late charges were assessed every month between March, 1995 and January, 1996. Mr. Jones, however, testified that he only received one letter from Lomas during that time, no demand was made for the delinquent payment and his checks were accepted, regardless of whether the amount sent was adequate to cover the installment due.
¶ 3. The loan was acquired by Temple-Inland Mortgage Corporation in January, 1996. The Joneses had not yet made the $1,670.23 payment due to Lomas on January 1, 1996. Late fees in the amount of $219.90 also were carried over from Lomas to Temple-Inland. Mr. Jones indicated that he did not understand that the unpaid balance owed to Lomas was transferred to the amount owed at Temple-Inland.
¶ 4. Temple-Inland first received a check from the Joneses in the amount of $1,670.23 on February 7, 1996, which was applied to the past-due January balance. A late fee of $49.98 was posted to the account on January 15, 1996. Another late fee of $49.98 was posted on February 15, 1996 for the February payment, which was due on February 1, 1996. On February 20, 1996, Temple-Inland sent the Joneses a form letter notifying them that a late fee had been assessed because the February payment had not been received. The letter explained that a balance of $1991.81 was due, including late fees in the amount of $321.58.
¶ 5. On March 20, 1996, Temple Inland received a check from the Joneses in the amount of $1,670.23. That amount was credited to their account as the February payment. An additional late fee of $49.98 was posted on March 15, 1996, for the payment which had been due on March 1, 1996.
¶ 6. Because of adjustments in the escrow account, the April payment due was only $1,589.22. By this time, however, $3,629.29 was required to bring the Joneses' mortgage current. Temple-Inland received a payment of $1,400 from the Joneses on April 10, 1996. Because it was $270.23 short of the full payment still owed for March, the month to which it was to be credited, the monies received were placed in a suspense account. The suspense account generally is used to hold extra funds or partial payments while Temple-Inland contacts the borrower to determine where the balance is or how the additional funds are to be applied. The accrued late fee of $372.42 was paid from the suspense account on April, 16, 1996, but credited back to it on May 26, 1996.
¶ 7. The next installment of $1589.22 was due on May 1, 1996. Temple-Inland received a payment of $1,500 from the Joneses on May 15, 1996. Temple-Inland combined this with other monies in the suspense account and credited it to the Joneses' account as the March installment. At this point, the Jones had $1,178.93 in the suspense account, but were behind on their April and May installments. On May 2, 1996, Temple-Inland sent the Jones a notice of intent to foreclose, advising them that $5,828 (including the installment due June 1, 1996), was due on June 4, 1996 to make their account current. It was Temple-Inland's standard practice to send such a letter whenever a loan was between thirty and sixty days delinquent to inform the borrower of the default, advise him of the amount needed to make his account current and provide a telephone number for assistance. The notice arrived on Mrs. Jones' birthday, which, she claimed, caused her great distress.
*1164 ¶ 8. Because of a reduction in interest rates, the installment due June 1, 1996 was reduced to $1,567.69. A second notice of intent to foreclose was sent to the Joneses on June 6, 1996, advising them that $6,085.52 (including the installment due July 1, 1996) was due by July 8, 1996 to avoid foreclosure proceedings. Temple-Inland received a check from the Joneses for $1,500 on June 10, 1996. Because they were already two months in arrears and the check was less than amount of the installment owed, Temple-Inland returned that payment as well as the amount remaining in the suspense account on June 17, 1996. The note sent with the check explained that Temple-Inland was unable to accept less than the amount due and emphasized the importance of contacting the Foreclosure Department to determine the exact amount due. Once a loan was transferred from the Collections Department to the Foreclosure Department, Temple-Inland could no longer retain any partial payments for deposit into the suspense account.
¶ 9. By July 1, 1996, four installments now were due or past due, amounting to some $6,382.10, including late fees. Temple-Inland received $4,178.93 from the Joneses on July 9, 1996. From that amount, $3,178 was credited to the Joneses' account for the past-due April and May installments. Temple-Inland also deducted $473.24 in late fees as well as a $15 inspection fee. The remaining $512.25 was placed in the suspense account. The June and July installments remained unpaid.
¶ 10. When the next installment came due on August 1, 1996, the Joneses owed three installments, totaling $4,784.59. Temple-Inland received a payment of $1,567.69, which was returned to the Joneses because it was less than the amount due.
¶ 11. By September 1, 1996, the Joneses owed four installments of $1,567.69, totaling $6,270.76. Temple-Inland's attorney sent the Joneses a reinstatement quote of $6,828.45, if paid before September 30, 1996, breaking down the amounts owed for the installments owed, late fees, anticipated late fees, current as well as advanced foreclosure fees. The reinstatement quote included a credit for the $512.25 remaining in the suspense balance. Temple-Inland received payment of $3,342.92 from the Joneses on September 13, 1996, which again was returned since it was less than the total amount due. The record indicates that no payment was made in October.
¶ 12. On October 17, 1996, the Joneses filed a complaint in the Chancery Court of Adams County "in the nature of discovery and also for punitive damages" against Temple-Inland. They variously claimed that the lender had made false accusations against them, subjected them to harassment over payment of their note and other "mysterious charges" and "indicated a willful desire to take the home away from the Plaintiffs by whatever means they can concoct." Temple-Inland failed to respond, and a default judgment was entered on December 5, 1996. Finding that Temple-Inland had not received a copy of the complaint because of some clerical error, the chancellor granted the motion to set aside the default on January 7, 1997. He ordered Temple-Inland to provide the date and amount of the four payments it claimed were in arrears, enjoined it from taking any further foreclosure proceedings against the Joneses and ordered the lender to accept any payments made by them, regardless of the amount paid.
¶ 13. Pursuant to the court order, Temple-Inland produced an extremely detailed statement of the Joneses' arrearage on February 6, 1997. In its February 10, 1997, amended answer and counterclaim, Temple-Inland requested that the chancellor rule as to whether the Joneses were current on their obligations under the note and deed of trust and make a determination of the amount still owed to avoid foreclosure.
*1165 ¶ 14. A bench trial was held on April 7, 1997. The chancellor found that Joneses were currently in default and ordered a supplemental hearing to determine the arrearage. However, he found that there were "glaring defects" in Temple-Inland's accounting and that it was "inequitable and unjust for Temple to declare the entire indebtedness due and payable ... without furnishing Plaintiffs a correct statement of the amounts due...." The chancellor further found that Temple-Inland's actions were "unconscionable and unfair and totally uncalled for." He ordered Temple-Inland to pay actual damages in the amount of $5,000 and punitive damages of $15,000. Temple-Inland now appeals the chancellor's ruling.
DISCUSSION
I. WHETHER THE CHANCELLOR ERRED IN FINDING THAT TEMPLE-INLAND FAILED TO ADVISE THE JONESES OF THE AMOUNT DUE TO BRING THEIR ACCOUNT CURRENT AND PREVENT FORECLOSURE
II. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT TEMPLE-INLAND'S ACTIONS WERE "UNCONSCIONABLE AND UNFAIR AND TOTALLY UNCALLED FOR" IN LIGHT OF HIS FINDING THAT THE JONESES WERE IN DEFAULT OF THEIR OBLIGATIONS UNDER THE NOTE AND THE DEED OF TRUST
¶ 15. In these assignments of error, Temple-Inland challenges the chancellor's findings of fact, asserting that he erred in finding that the mortgage company failed to advise the Joneses of the amount due to make their account current and that its dealings with the Joneses were "unconscionable and unfair and totally uncalled for." The chancellor found that the Joneses were in default. He further found[1] that:
When Temple elected to declare the full amount of indebtedness due because of the alleged default in the payment of interest and taxes and otherwise, the Plaintiffs were entitled to know the amount they were in arrears, and Temple was the only person who could furnish that information. While the record disclosed no actual fraud in Temple's accounting (which, by the way, was finally done by Court order), there were glaring defects in the amount, and it was inequitable and unjust for Temple to attempt to declare the entire indebtedness due and payable because of default in the payment of the note without furnishing the Plaintiffs a correct statement of the amounts due so that they might know what amount they had to raise to prevent a foreclosure of their property.
* * *
The Court feels that the action of the mortgagee was unconscionable and unfair and totally uncalled for, which made the Plaintiffs go to the expense of filing a case in equity before they could receive an accounting of what Temple claimed was due.
¶ 16. On appeal, this Court will not overturn the findings of the chancery court if they are supported by substantial evidence "unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Griffin v. Armana, 687 So.2d 1188, 1192 (Miss.1996); Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309, 1312-13 (Miss.1989). Thus, we generally will affirm a trial court sitting without a jury on a question of fact unless, based on substantial evidence, the court is manifestly wrong. Brown v. Williams, et al., 504 So.2d 1188, 1192 (Miss.1987). Accordingly, we must examine the entire record and accept that evidence which supports or reasonably tends to support the *1166 findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact. Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983).
¶ 17. There is substantial evidence in the record to support the chancellor's finding that the Joneses were in default. Having carefully reviewed the record now before us, however, we cannot say that the evidence, together with any inferences that may be drawn therefrom, supports or even reasonably tends to support the chancellor's finding that Temple-Inland failed to provide the Joneses with an accurate statement of the amount they owed to make their account current. To the contrary, our review of the record suggests that the chancellor's findings were manifestly wrong. As early as February, 1996, Temple-Inland advised the Joneses of the amount which they were in arrears. In all correspondence, the amount required to make their account current was clearly stated and the Joneses were encouraged to call a Temple-Inland representative for additional information and assistance in making their payments. Mr. Jones' testimony relates only a $20 discrepancy in the figures Temple-Inland presented to him. Moreover, he admitted that he did not understand the print-outs and other payment information he was sent.
¶ 18. We further find no basis in the record for the chancellor's finding that Temple-Inland's dealings with the Joneses were "unconscionable and unfair and totally uncalled for." The Joneses signed a promissory note and deed of trust acknowledging that they would be in default if their monthly mortgage installments were not timely paid in full, allowing the lender to accelerate the debt and initiate foreclosure proceedings. Indeed, the chancellor expressly found that the Joneses were in default. They appear to labor under the misapprehension, however, that because Lomas did not pursue foreclosure proceedings despite the fact the Joneses remained at least one month in arrears during the entire time the mortgage was serviced by that company and frequently sent payments of less than the amount of the installment due, Temple-Inland now has treated them unfairly by enforcing its rights under the terms of the promissory note and deed of trust. The record provides no evidence of harassment or unfair dealings by Temple-Inland. Rather, Temple-Inland's correspondence with the Joneses, form letters and notices as well as responses to specific requests for information, was politely phrased and non-threatening. There further is no evidence to infer that any Temple-Inland employees were rude to the Joneses beyond Mr. Jones' vague statement that "I talked to somebody; she talked to a bunch of people, because they would call and say, `You owe $6,000.'"
¶ 19. Based on the evidence in the record, the chancellor's findings that Temple-Inland failed to advise the Joneses of the amount due to bring their account current and handled the matter of their delinquency in a manner that was "unconscionable and unfair and totally uncalled for" are manifestly wrong. To the contrary, the fact that Temple-Inland tried to work with the Joneses for nearly six months to avoid foreclosure before the Joneses filed this action would seem to indicate that the lender's actions were neither unfair nor uncalled for. The record, however, does support the chancellor's finding that the Joneses were in default on their mortgage obligation.

III. WHETHER THE CHANCELLOR ERRED IN ITS APPLICATION OF JOHNSON v. GORE, 224 Miss. 600, 80 So.2d 731 (1955) TO THE FACTS OF THIS CASE AND ITS RELIANCE ON THE CASE LAW CITED IN THE FINAL DECREE
¶ 20. In his final decree, the chancellor found that the facts of this case were very close to those in National Mortgage Co. v. Williams, 357 So.2d 934 (Miss.1978). He thus relied on Williams and its discussion *1167 of Johnson v. Gore, 224 Miss. 600, 80 So.2d 731 (1955), quoting in his opinion the proposition that "equity will relieve the mortgagor from the consequence of a default if the mortgagee has done some act which makes it unconscionable for him to take advantage of it." Williams, 357 So.2d at 937. Temple-Inland now asserts that the chancellor erred in relying on these cases and applying them to the case sub judice. Both cases are factually distinguishable and because there is no evidence that Temple-Inland acted unconscionably or inequitably so as to cause the default, Johnson, 224 Miss. at 615, 80 So.2d at 736, they are of little relevance to the case now before this Court.
¶ 21. In Williams, the Mississippi Supreme Court was presented with the issues of wrongful foreclosure and the damages allowable. The lender had foreclosed on the borrower despite her protestations that she was not in default. It subsequently was determined, after the foreclosure sale and during trial of the lender's suit to dispossess Mrs. Williams, that the presumed delinquency arose as the result of the lender's failure to credit her account with payments she had made to the assignor from which the lender had acquired the note and mortgage. On the day the action was dismissed, the lender's attorney stated that although Mrs. Williams might not have been delinquent when the proceedings were initiated, she now was. A second foreclosure action promptly was filed. No accounting of the various trustees fees, costs and installments owed was provided to her. Finding that both foreclosure actions had been wrongful and invalid, and that the amount of the indebtedness probably was not known to either party, the Mississippi Supreme Court affirmed the lower court's decision which allowed the issues of actual and punitive damages to go to the jury.
¶ 22. As distinguished from Williams, there was no actual foreclosure of the Joneses' property. The damages at issue in Williams simply do not exist in the case sub judice. Moreover, unlike Mrs. Williams, the Joneses were in default at the time Temple-Inland acquired the mortgage from Lomas in January, 1996, and the deficiency was never remedied despite the lender's communications to the Joneses each month advising them of the amount past due. Temple-Inland did nothing to cause the default. As further distinguished from Williams, again because no foreclosure sale had occurred, the statements provided to the Joneses clearly indicated that they needed only to pay the past-due installments and late fees to bring their account current; they were not required to pay any unexplained and disputed trustee fees and other expenses of a wrongful foreclosure. Their problems arose from their failure to understand the standardized information they were provided by the lender, and not, as in Williams, from the lender's own actions.
¶ 23. In Johnson, the supreme court looked at the special circumstances existing between the mortgagee and the mortgagor to determine that "Gore [the mortgagee] was estopped from exercising the right conferred upon him in the mortgage contract to declare the entire amount of the indebtedness due prior to its maturity without first rendering to Johnson [the mortgagor] a true and correct account of the amounts received by him, and the balance due on the indebtedness, and giving Johnson a reasonable opportunity to pay the past due interest and taxes...." Johnson, 224 Miss. at 616-17, 80 So.2d at 737. Johnson was imprisoned at the time of the foreclosure. Gore apparently managed the property for Johnson while he was in the federal penitentiary, selling timber with Johnson's consent, advancing supplies to carry on farming operations. As the supreme court found, Johnson had reasonable cause to believe that Gore had collected enough from the sale of the timber, crop proceeds and rents paid by tenants on the land to cover the principal, interest and taxes due. He obtained a release from prison two days before the *1168 foreclosure sale and contacted Gore and the trustee, seeking an extension of time in which to pay the debt and avoid the sale of his property. Gore refused. Given Gore's role in managing Johnson's property and the financial aspects of the farming and timber operations conducted thereon, the supreme court disagreed with the chancellor's approval of the foreclosure and found both that Gore had a duty to provide Johnson with a correct accounting of the monies that had been credited and the amount still owed and that he was estopped from accelerating the debt owed. It was in this context that the court found that a mortgagor may be relieved from the consequences of an acceleration clause which is the result of "some unconscionable and inequitable conduct of the mortgagee." To the extent that Johnson imposes a duty to provide an accounting of the indebtedness necessary to avoid a foreclosure before the mortgagee can proceed with a foreclosure sale, Temple-Inland has complied. We note, however, that like Williams, the case is distinguishable from the case sub judice because the Joneses' property was not sold and there is no evidence that Temple-Inland acted unconscionably or inequitably to bring about the Joneses' default on the their mortgage obligation.
IV. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT THE JONESES WERE ENTITLED TO ACTUAL DAMAGES IN THE AMOUNT OF $5,000 WHEN THE COMPLAINT FAILED TO STATE A CAUSE OF ACTION FOR RECOVERY OF ACTUAL DAMAGES AND AT TRIAL, THEY FAILED TO PROVE ANY DAMAGES
V. WHETHER THE CHANCELOR'S AWARD OF $5,000 IN ACTUAL DAMAGES WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 24. Without providing any explanation for the basis of his award, the chancellor found that the Joneses were entitled to actual damages of $5,000. The Joneses did not seek any compensatory damages in their pleadings; rather, their complaint expressly limited the relief sought, stating that "[t]he suit is in the nature of discovery and also for punitive damages because of the false accusations made against the Plaintiffs relating to money claimed to be owed by the Plaintiffs to the Defendants." The failure to plead actual damages notwithstanding, Temple-Inland contends that the Joneses have proven neither injury nor damages and thus, there is nothing in the record to support the award of actual damages.
¶ 25. "Damages, whether arising out of contract or tort, must be the result of an actual injury." McDaniel Bros. Construction Co. v. Jordy, 195 So.2d 922, 925 (Miss.1967). The evidence in the record does not support the chancellor's finding of any wrongdoing on the part of Temple-Inland. Especially in light of the chancellor's finding that the Joneses were in default on their mortgage obligation, they have not proven any actual injury. They further have not met their burden of proof as to showing the amount of any damages suffered. Puckett Machinery Co. v. Edwards, 641 So.2d 29, 36 (Miss.1994); City of New Albany v. Barkley, 510 So.2d 805, 808 (Miss.1987).
¶ 26. The chancellor noted in his opinion that "[t]he Court feels that the action of the mortgagee was unconscionable and unfair and totally uncalled for, which made the Plaintiffs go to the expense of filing a case in equity before they could receive an accounting of what Temple claimed was due." Assuming arguendo that this language suggests that the chancellor awarded damages to compensate the Joneses for attorney fees they incurred, the general rule is that attorney fees are not a proper element of damages in a breach of contract suit unless the contract itself provides for them. Stokes v. Board of Directors of La Cav Improvement Co., 654 So.2d 524, 529 (Miss.1995). The security agreement provides only that, pursuant to the borrower's *1169 right to reinstate prior to implementation of its power of sale provisions, the borrower shall, among other obligations, be liable to the lender for any legal fees incurred in enforcing the terms of the agreement. No such provisions are made for the benefit of the borrower.
¶ 27. Especially in light of the chancellor's finding that the Joneses were in default, the evidence in the record does not support an award of actual damages. The Joneses put forth no evidence of actual injury or damages. Further, since there was no provision in the security agreement which could be construed as allowing attorney fees for the borrower, an award of damages as compensation for attorney fees would not be appropriate. We therefore reverse the award of actual damages.
VI. WHETHER THE CHANCELLOR ERRED IN AWARDING PUNITIVE DAMAGES IN LIGHT OF THE FACT THAT THERE IS NO EVIDENCE IN THE RECORD THAT THE JONESES SUFFERED ANY ACTUAL DAMAGES
VII. WHETHER THE CHANCELLOR'S AWARD OF PUNITIVE DAMAGES WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL AND IN THE RECORD
¶ 28. In their complaint, the Joneses stated that "[t]he suit is in the nature of discovery and also for punitive damages because of the false accusations made against the Plaintiffs relating to money claimed to be owed by the Plaintiffs to the Defendants." In addition to awarding $5,000 in actual damages, the chancellor further ordered Temple-Inland to pay $15,000 in punitive damages. Temple-Inland appeals the award, asserting that in absence of any actual damages, there can be no award for punitive damages and that the award was against the overwhelming weight of the evidence.
¶ 29. We note first that despite the language used in the pleadings, a claim for punitive damages is not "free-standing;" that is, "if there are no actual damages, then there is no right to sue for punitive damages." Kaplan v. Harco National Insurance Co., 716 So.2d 673, 680 (¶ 36)(Miss.Ct.App.1998). It is well-established that punitive damages are not intended to compensate a party for some injury; rather, they are given as punishment to the wrongdoer to serve as a deterrent to others who might be inclined to commit similar offenses. Mississippi Power Co. v. Jones, 369 So.2d 1381, 1387 (Miss.1979). Where, as in the case sub judice, there are no actual damages, punitive damages are not recoverable. Hopewell v. Trustmark National Bank, 680 So.2d 812, 820 (Miss.1996). Having found no basis for the chancellor's award of actual damages to the Joneses, we are required also to find that the award of punitive damages was inappropriate.
¶ 30. "A plaintiff is entitled to punitive damages only if he has demonstrated a willful or malicious wrong or the gross, reckless disregard for the rights of others." Valley Forge Insurance Co. v. Strickland, 620 So.2d 535, 540 (Miss.1993). The Joneses proved neither injury nor damages. The record further does not present any evidence of wrongdoing on the part of Temple-Inland. Rather, the lender was simply pursuing its lawful remedies against a borrower in default. As discussed supra, there was no evidentiary support for the chancellor's finding that Temple-Inland's actions were "unconscionable and unfair and totally uncalled for." Further, the Joneses presented no evidence that Temple-Inland had made false accusations against them as claimed in their pleadings. Since there was no basis for the chancellor's determination of actual damages and the Joneses made no showing that Temple-Inland acted willfully, maliciously or with reckless disregard for the rights of others, we must also reverse the award of punitive damages.

*1170 CONCLUSIONS
¶ 31. The chancellor was manifestly wrong in his findings that Temple-Inland failed to advise the Joneses of the amount due to avoid foreclosure and that the lender acted in a manner that was "unconscionable and unfair and totally uncalled for." We affirm, however, his finding that the Joneses were in default on their obligation to Temple-Inland. Because there is no evidence to support the awards of actual and punitive damages, we reverse and render the decision of the court below.
¶ 32. THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART CONSISTENT WITH THE TERMS OF THIS OPINION. COSTS ARE ASSESSED TO THE APPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] This paragraph of the chancellor's opinion was taken verbatim from Johnson v. Gore, 224 Miss. 600, 614, 80 So.2d 731, 736 (1955), discussed in Issue III.